THE MINNESOTA. THE SIDRA.

(District Court, S. D. New York. February 28, 1911.)·

COLLISION (§ 81\*) — STEAM VESSELS MEETING IN FOG — STEAMER WITHOUT WHISTLE.

 The steamship Minnesota, when proceeding down the New Jersey coast from New York in a dense fog, came into collision with the steamship Sidra on the opposite course. When the Minnesota left port her steam · whistle was so out of repair that it could not be used, and she was compelled to use a fog horn, which was sounded about every minute. She was proceeding at half speed, which was 7 miles an hour, when she heard the fog signals of the Sidra ahead and stopped her engines, but did not reverse. The Sidra on hearing a single blast of the fog horn of the Min-

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

nesota ahead, which, under article 15 (c) of the International Rules (Act Aug. 19, 1890, c. 802, 26 Stat. 320 [U. S. Comp. St. 1901, p. 2868]) should have indicated a sailing vessel on the starboard tack moving toward the eastward, stopped, but after waiting a minute and hearing no further signal proceeded at slow speed, but on again hearing the fog horn reversed, and gave alarm signals, the collision following almost at once. *Held,* that the Minnesota was unseaworthy at the commencement of the voyage for want of an efficient whistle, which fault, together with her failure to reverse at once on hearing the Sidra's signal ahead, rendered her liable for the collision; that the Sidra was not clearly chargeable with contributory fault in not reversing sooner, having been misled by the signal of the Minnesota.

[Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 157–166; Dec. Dig. § 81.*

Signals of meeting vessels, see note to The New York, 30 C. C. A. 630.]

In Admiralty. Suit by Alexander Jaggs, as master of the steamship Minnesota, against the steamship Sidra, and cross-libel against the Minnesota. Decree against the Minnesota.

Harrington, Bigham & Englar (Howard S. Harrington, advocate), for the Sidra.

Wallace, Butler & Brown (James K. Symmers, advocate), for the Minnesota.

HOLT, District Judge. These are two actions, upon a libel and cross-libel, to recover damages for a collision between the steamers Sidra and Minnesota, at a point off the coast of New Jersey about 27 miles south by west from the Scotland Lightship, on March 1, 1910. The Sidra is a British vessel of 2,033 registered net tons, 322 feet long. The Minnesota is a Norwegian vessel of 813 registered net tons, 230 feet long. The Sidra was proceeding on a voyage from Matanzas to New York, and the Minnesota on a voyage from New York to Port Antonio. The collision occurred in a dense fog. The witnesses put the distance at which an object could be seen in it at from 300 to 600 feet. The vessels were on opposite courses, the Sidra heading north by east, and the Minnesota south by west. The collision occurred at 3:20 p. m. by the Minnesota's time, and at 2:53 p. m. by the Sidra's time. The Minnesota had left her pier in Brooklyn that morning at 10:30 a. m. While going down the bay, it was observed that her steam whistle was out of order. This is admitted by the captain and officers of the Minnesota. Capt. Egmond, master of the Dutch steamer Surinam, which happened to be at anchor near the West Bank Light in the lower bay when the Minnesota passed out, testified that as she passed he heard the Minnesota try her whistle six or seven times, and then noticed that it was broken, that it made a little hissing sound, which he said could be heard only a little over a ship's length. After leaving the Scotland Lightship, and before the fog shut in, the captain of the Minnesota told the mate to tell the engineer to take down the whistle and see what was the matter with it, and to have the fog horn up on the bridge ready in case there should be fog. The fog horn was accordingly brought up on the bridge. At 2:45 p. m., according to the Minnesota's time, the

fog settled in thick. They tried the fog whistle, and found that it was broken so that they could not use it, and from that time on the Minnesota proceeded at half speed, sounding one blast on the fog horn at intervals of about a minute. The full speed of the Minnesota was about 11¾ knots an hour. Her half-speed was about 7 knots an hour. The Minnesota, at 3:15 p. m., according to her own time, heard the fog signals of a steamer apparently dead ahead. She stopped her engines and kept them stopped, while those in charge of her, including her lookout stationed on the forecastle head, listened for repetitions of the signal, which was heard twice again, also directly ahead. At 3:19 the Sidra came into sight, not over 300 feet away. The engines of the Minnesota were then reversed at full speed, her helm put hard aport, and three blasts of the fog horn blown. The collision happened in about three-quarters of a minute, about as near head and head as possible, the stem of the Minnesota meeting the Sidra a little to the port of the latter's stem.

The evidence for the Sidra shows that she encountered thick fog that day at a few minutes after 8 a. m. She thereupon proceeded at a speed not exceeding 3½ knots an hour. She was approaching the New Jersey shore, and during the day frequently stopped to take soundings. Her fog whistle was blown about every 45 seconds. A competent lookout was stationed on the forecastle head. Her engines were making about 20 or 22 revolutions per minute, as against 56 at her full speed of 9 knots. While thus proceeding, a single blast of a foghorn was heard ahead. The Sidra's engines were immediately stopped. The captain assumed that the single blast of the foghorn indicated a sailing vessel on the starboard tack, in accordance with the requirements of article 15, subd. "c," of the International Rules. The wind was east or southeast, and one blast of the fog horn indicated a sailing vessel crossing the Sidra's course from port to starboard. The captain waited, with his engines stopped, a full minute without hearing any repetition of the supposed sailing vessel's signal. He concluded that she had passed across his course to starboard out of earshot, and started ahead again, proceeding at slow speed. About a minute later, the master of the Sidra heard another blast of the fog horn close ahead. He immediately ordered his helm hard aport, and his engines put at full speed astern, and sounded three blasts to indicate that he was backing. Practically simultaneously with his hearing the second fog horn blast, the Minnesota loomed out of the fog, and shortly afterwards the collision occurred.

I think it entirely clear upon these facts that the Minnesota was at fault for the collision. Before she left the harbor of New York, it was apparent to all on board that her steam whistle was unfit for use. She was therefore unseaworthy when she left port. A steam whistle in perfect order, capable of giving the signals required by the rules of navigation, is one of the most important articles of a steamer's equipment. It is as important as a compass or an anchor. In foggy weather, it is the only means permitted by the rules for giving information of a vessel's presence or of its approach to other vessels. The rules require that a steam vessel under way in a fog

shall sound at intervals of not more than two minutes a prolonged blast on her whistle. The only occasion on which a steam vessel can properly use a fog horn is stated in rule 15, subd. "c," that is, when she is towing, or is a vessel employed in laying or picking up a telegraph cable, or is unable to get out of the way of an approaching vessel through being not under command or unable to maneuver as required by the rules. A fog horn is ordinarily used exclusively by sailing vessels. If the Minnesota's steam whistle had been in order, and the men in charge of the navigation of the Sidra had heard its blast ahead, they would have had warning of a steam vessel approaching. Hearing one blast of a fog horn ahead, they had a right to infer that it was a sailing vessel on the starboard tack, crossing the Sidra's course from port to starboard. The Minnesota was clearly at fault for having put to sea with her steam whistle out of order, when her officers knew before leaving port that it was out of order. The use of the fog horn instead of the whistle was, in my opinion, the immediate cause of the collision.

I think that the Minnesota was also at fault for not reversing when she first heard the whistle of the Sidra ahead. The evidence is that when she heard the first whistle she stopped her engines, but she did not reverse or do anything further to stop the steamer. She had been going at half speed—about 7 knots an hour. She subsequently heard the whistle twice more without doing anything to stop the steamer, and it was not until she heard it the third time that she reversed her engines. As soon as she heard the first blast of a steam whistle directly ahead, in a dense fog, article 16 of the International Rules required that she stop her engines, and then navigate with caution until danger of collision was over. In my opinion, she was not navigating with caution when she simply stopped her engines and drifted on directly towards the steamer sounding the whistle ahead. As her own whistle was out of order, she had no means of notifying the Sidra that she was a steamer; and although her engines were stopped, she was under a headway on 7 knots an hour when they were stopped, and went drifting right on towards the coming steamer. I think she should have reversed as soon as she heard the first blast ahead.

I can see no ground for criticising the navigation of the Sidra except upon the single point that, after she had once stopped her engines on hearing the fog horn ahead, and they had remained stopped for a minute, she started ahead again. The language of the rule is:

"A steam vessel hearing, apparently forward of her beam, the fog signal of a vessel the position of which is not ascertained shall, so far as the circumstances of the case admit, stop her engines, and then navigate with caution until danger of collision is over."

In the opinion of the United States Supreme Court, in the case of The Umbria, 166 U. S. 404, 417, 17 Sup. Ct. 610, 615 (41 L. Ed. 1053) it is stated as follows:

"The general concensus of opinion in this country is to the effect that a steamer is bound to use only such precautions as will enable her to stop in time to avoid a collision after the approaching vessel comes in sight,

provided such approaching vessel is herself going at the moderate speed required by law. In a dense fog this might require both vessels to come to a standstill until the course of each was definitely ascertained. In a lighter fog it might authorize them to keep their engines in sufficient motion to preserve their steerage way."

The rule undoubtedly does not state that the vessel must be stopped. It states that the engines must be stopped, but undoubtedly, if the subsequent navigation with caution required by the rule necessitates that the vessels should come to a standstill until the course of each is definitely ascertained, that must be done. Judging in the light of the result, it would undoubtedly have been better for the captain of the Sidra to have waited some time longer before starting ahead, although, in my opinion, it is doubtful whether even that would have averted the collision, since the Minnesota, coming on at a speed of about 7 knots an hour, did not stop her engines until she heard the Sidra ahead, and did not reverse until the Sidra came in sight. But I think that it was natural for the captain of the Sidra, having waited a full minute, and hearing no further blast from the fog horn ahead, to assume that the schooner had passed to starboard. At all events, the fundamental faults of the Minnesota are so marked, and the question whether the Sidra was in fault in starting ahead after stopping for a minute is so doubtful, that the entire blame for the collision should be placed upon the Minnesota.

My conclusion is that there should be a decree for the libelant in the suit by the master of the Sidra, and a decree dismissing the cross-libel in the suit by the master of the Minnesota, with the usual reference to compute the damage.